## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

JERMAINE KEITH,

                    Petitioner,

                                                    Case No. 14-13340
          v.                                        HON. TERRENCE G. BERG

CARMEN PALMER,

                    Respondent.

_____/

## OPINION AND ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT (DKT. 8), DENYING PETITIONER'S MOTION TO STAY (DKT 3), AND DENYING CERTIFICATE OF APPEALABILITY

Michigan state prisoner Jermaine Keith has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is in the custody of the Michigan Department of Corrections pursuant to convictions for assault with intent to commit murder, four counts of felonious assault, and possession of a firearm during the commission of a felony. Respondent moves for summary judgment on the ground that the petition is untimely. For the reasons explained below, the Court finds that the petition is untimely. As a result, Respondent's motion for summary judgment (Dkt. 8) is **GRANTED** and Petitioner's motion to stay (Dkt. 3) is **DENIED**.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

Petitioner's convictions arise from a shooting that occurred in the City of Detroit on November 4, 2006. The Court summarizes the facts based on its review of the trial transcript, as well as the recitation of facts presented in the decision by

the Michigan Court of Appeals. On the evening of November 4, 2006, Tammy Robinson visited her sister at her sister's home located on 13400 Lauder Street in the City of Detroit. (Dkt. 9, Ex. 3, p. 12.) Ms. Robinson's brothers and nieces were also present. At some point, Petitioner arrived at the home and got into a physical altercation with Ms. Robinson. (*Id.* at p. 14-19.) The fight escalated and resulted in Ms. Robinson slashing Petitioner's face with a knife. (*Id.*) Following this fight, Petitioner threatened that he would come back and shoot and kill Ms. Robinson. (*Id.* at 21.)

At trial, Ms. Robinson testified that her brother-in-law told her and her siblings to get the children out of the house in case Petitioner returned. (*Id.* at 24.) As they were attempting to leave, Ms. Robinson, her sister, and one of her brothers all testified that Petitioner returned and opened fire. (Dkt. 9, Ex. 3.) Ms. Robinson reported feeling a bullet passing by her head as she stood on the porch of the house holding one of her nieces. (Dkt. 9, Ex. 2, p. 19.) She then ran inside the home with her siblings and nieces as Petitioner continued shooting at the house. (*Id.* at 26-28.) Tammy Robinson's account of the events was supported in part by the trial testimony of Officer Matthew Hernandez of the Detroit Police Department. Officer Hernandez testified that he responded to the victims' 911 call on the night of the incident. (Dkt. 9, Ex. 3, p. 135.) He observed four bullet holes in the house, including two in the west dining room window and two in the south dining room window. (*Id.* at 140-41.) Shell casings were not recovered. (*Id.* at 148.)

2

The Michigan Court of Appeals set forth the relevant facts as follows:

> [T]he evidence showed that defendant got into a fight with Tammy
> Robinson, following which, he specifically stated she was going to die
> and that he would come back and shoot her.  Defendant left, returned
> with a gun, and started shooting.  Tammy testified that defendant
> fired a shot at her while she was still on the porch.  Her sister testified
> that defendant did not start shooting until she and Tammy had run
> inside, but also testified that defendant fired directly at them as they
> were running past the window.  Tammy testified that she felt a bullet
> passing by her head.

*People v. Keith*, No. 278573, 2008 WL 2938787, *1 (Mich. Ct. App. July 31, 2008).

Following a bench trial in Wayne County Circuit Court, Petitioner was convicted

and sentenced as follows: assault with intent to commit murder (16 to 25 years),

four counts of felonious assault (1 to 4 years for each conviction), and felony firearm

(2 years).  He filed an appeal of right in the Michigan Court of Appeals.  The

Michigan Court of Appeals affirmed his convictions.  *People v. Keith*, No. 278573,

2008 WL 2938787 (Mich. Ct. App. July 31, 2008).  Petitioner filed an application for

leave to appeal in the Michigan Supreme Court.  On November 25, 2008, the

Michigan Supreme Court denied leave to appeal.  *People v. Keith*, No. 137302, 482

Mich. 1701 (Mich. Nov. 25, 2008).

On June 7, 2010, Petitioner filed a motion for relief from judgment in the

trial court.  The trial court denied the motion.  7/20/10 Order Denying Motion for

Relief From Judgment, *People v. Keith*, No. 07-003986.  The trial court denied a

motion for reconsideration on August 17, 2010.  Petitioner filed an application for

leave to appeal in the Michigan Court of Appeals.  The Michigan Court of Appeals

denied leave to appeal.  *People v. Keith*, No. 302918 (Mich. Ct. App. June 20, 2011).

The Michigan Supreme Court also denied Petitioner's application for leave to appeal. *People v. Keith*, 490 Mich. 969 (Mich. Dec. 28, 2011).

On July 9, 2012, Petitioner filed a second motion for relief from judgment in the trial court. The trial court denied the motion on September 26, 2012, and denied a subsequent motion for reconsideration on October 23, 2012. *See* 9/26/12 Opinion & Order Denying Defendant's Second Motion for Relief from Judgment; 10/23/12 Order Denying Motion for Reconsideration, *People v. Keith,* No. 07-003986. On August 29, 2013, the Michigan Court of Appeals dismissed Petitioner's application for leave to appeal for lack of jurisdiction because, under Mich. Ct. R. 6.502(G)(1), a defendant may not appeal the denial of a successive motion for relief from judgment. *People v. Keith*, No. 314129 (Mich. Ct. App. Aug. 29, 2013).

Petitioner filed a third motion for relief from judgment on October 1, 2013. The trial court denied the motion on December 17, 2013. *See* 12/17/13 Opinion and Order Denying Defendant's Third Successive Motion for Relief from Judgment, *People v. Keith*, No. 07-003986. The Michigan Court of Appeals then dismissed Petitioner's application for leave to appeal for lack of jurisdiction under Mich. Ct. R. 6.502(G)(1). *People v. Keith*, 322582 (Mich. Ct. App. Aug. 11, 2014). Petitioner filed an application for leave to appeal in the Michigan Supreme Court. That application remains pending.

Petitioner filed this habeas corpus petition on August 27, 2014.

## II.    DISCUSSION

Respondent argues that the petition is barred by the one-year statute of limitations.  A prisoner must file a federal habeas corpus petition within one year of the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . or the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(A) & (D).  The one-year limitation period begins at the deadline for filing a petition for a writ of certiorari to the United States Supreme Court.  *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).  In addition, the time during which a prisoner seeks state-court collateral review of a conviction does not count toward the limitation period.  28 U.S.C. § 2244(d)(2); *Ege v. Yukins*, 485 F.3d 364, 371-72 (6th Cir. 2007).  A properly filed application for state post-conviction relief, while tolling the limitation period, does not re-fresh the limitation period.  *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003).

Petitioner appealed his conviction first to the Michigan Court of Appeals, and then to the Michigan Supreme Court.  The Michigan Supreme Court denied his application for leave to appeal on November 25, 2008.  Petitioner had ninety days from that date to file a petition for writ of certiorari with the United States Supreme Court, which he did not do.  Thus, his conviction became final on February 23, 2009, when the time period for seeking certiorari expired.  *Bronaugh*, 235 F.3d at 283 (one-year statute of limitations does not begin to run until the time for filing

a petition for a writ of certiorari for direct review in the United States Supreme Court has expired). The last day on which a petitioner can file a petition for a writ of certiorari in the United States Supreme Court is not counted toward the one-year limitations period applicable to habeas corpus petitions. *Id.* at 285. Accordingly, the limitations period commenced on February 24, 2009, and continued to run uninterrupted until it expired one year later, February 24, 2010.

Petitioner's motions for relief from judgment did not toll the limitations period. The first motion for relief from judgment was filed on June 7, 2010, over three months after the limitations period already expired. *Vroman*, 346 F.3d at 602 (6th Cir. 2003) (holding that the filing of a motion for collateral review in state court serves to "pause" the clock, not restart it). Absent equitable tolling of the limitations period, the petition is untimely.

Equitable tolling is available to toll a statute of limitations when "'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000)). The one-year limitations period applicable to § 2254 is "subject to equitable tolling in appropriate cases." *See Holland v. Florida*, 560 U.S. 631, 645 (2010). To be entitled to equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007), quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). A

claim of actual innocence may also justify equitable tolling in certain circumstances. *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005). A petitioner bears the burden of showing that he is entitled to equitable tolling. *Robertson*, 624 F.3d at 784.

Petitioner has not filed a response to Respondent's motion, but does claim actual innocence in his petition. A credible claim of actual innocence may equitably toll the one-year statute of limitations. *See Souter v. Jones*, 395 F.3d 577, 588-90 (6th Cir. 2005). To determine whether a petitioner has satisfied the requirements for establishing a cognizable claim of actual innocence to warrant equitable tolling, the court applies "the same actual innocence standard developed in *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851 (1995), for reviewing a federal habeas applicant's procedurally defaulted claim." *McCray v. Vasbinder*, 499 F.3d 568, 571 (6th Cir. 2007) (citing *Souter*, 395 F.3d at 596.) A valid claim of actual innocence requires a petitioner

> to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

*Schlup*, 513 U.S. at 324. "The *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (citation omitted). A court presented with new evidence must consider it in light of "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at

7

trial." *Id.*, 547 U.S. at 538 (citation omitted). "Based on this total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Id.* (*quoting Schlup*, 513 U.S. at 329). This standard does not require absolute certainty about the petitioner's guilt or innocence:

> A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, **no reasonable juror** would find him guilty beyond a reasonable doubt – or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.

*House*, 547 U.S. at 538 (emphasis added).

Petitioner presents four affidavits he claims are newly-discovered evidence establishing his actual innocence. The first is an affidavit from James Porter, dated January 27, 2011. Porter states that he witnessed the shooting outside Tammy Robinson's house on November 4, 2006. He identifies Christopher Clemens as the shooter, and states that Petitioner was not outside the home when the shots were fired. Porter states that he did not come forward sooner because he was unaware that Petitioner had been convicted of this crime until he and Petitioner were incarcerated together at the Richard A. Handlon Correctional Facility. Porter's affidavit does not represent the type of credible evidence leading to the conclusion that it is more likely than not that no reasonable trier of fact would have voted for conviction had they heard this evidence. Porter was incarcerated with Petitioner and such jailhouse affidavits are regarded with extreme suspicion. *See Carter v Mitchell*, 443 F.3d 517, 539 (6th Cir. 2006). Porter's affidavit is executed more than four years after the crimes occurred. Further, Petitioner did not diligently seek

8

relief after obtaining the affidavit. A prisoner who presents a convincing actual-innocence claim does not have to "prove diligence to cross a federal court's threshold," but timing is "a factor relevant in evaluating the reliability of a petitioner's proof of innocence." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1935 (2013). As the Court stated in *McQuiggin*,

> To invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S., at 327, 115 S.Ct. 851. Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing…As we stated in *Schlup*, "a court may consider how the timing of the submission and the likely credibility of a petitioner's affiants bear on the probable reliability of … evidence of actual innocence."

*Id.* (internal parentheticals omitted). Here, Petitioner waited approximately 18 months after Porter executed his affidavit to file a motion for relief from judgment raising this claim. After the trial court denied the motion, the Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, which was denied on August 29, 2013. Yet, Petitioner then waited a year to file his habeas corpus petition.

The second affidavit is executed by Damone Williams and dated November 28, 2010. Williams' affidavit is also not the type of reliable evidence that would establish Petitioner's actual innocence. He states that he witnessed the altercation inside the home between Tammy Robinson and Petitioner. He saw Petitioner leave the house after he was cut on the face by Robinson and states that Petitioner did not return to the home at any point in time. Williams' affidavit contains no first-

hand knowledge of the shooting. He states Petitioner was not the shooter and did not return to the home, but makes no claim that he witnessed the shooting or saw the shooter. The affidavit, therefore, presents no exculpatory evidence.

Dujuan Fletcher's February 29, 2012 affidavit states that he witnessed the shooting and Petitioner was not the shooter. Although the content of Fletcher's affidavit is exculpatory, the circumstances surrounding the affidavit render its credibility suspect. Fletcher's affidavit was executed over five years after the shooting occurred. Fletcher provides no explanation for the delay or how he ultimately came to provide an affidavit. Given these shortcomings, Fletcher's affidavit is insufficient to show that no reasonable juror would have convicted him in light of this evidence.

The fourth affidavit is that of Glen Davis. It is dated November 21, 2010. Davis claims to have been present for the argument between Robinson and Petitioner. He witnessed Robinson cut Petitioner's face. He states that he then drove Petitioner to the hospital, where Petitioner told medical staff his name was Glen Davis. Davis further states that neither he nor Petitioner returned to the scene of the shooting at any time that night. Several factors call into question the credibility of Davis's statement. Davis waited four years after the crime to execute an affidavit, despite being aware of Petitioner's trial and conviction. Petitioner obviously knew of Davis's purported ability to provide an alibi, but did not mention Davis on direct appeal or in his first motion for relief from judgment. Further, at trial Petitioner assented to his counsel's strategic decision not to call Damone

Williams and Glen Davis as witnesses.  (Dkt. 9, Ex. 4, p. 19) (Where Petitioner's counsel stated on the record that she would not be calling them as witnesses based upon a "strategic standpoint.").  Because Petitioner purportedly used Davis's name at the hospital, the medical records fail to support Petitioner's presence at the hospital and call into question Davis's veracity.

The Court finds that Petitioner's claim of actual innocence is insufficient to satisfy the demanding actual innocence standard.  The affidavits all have significant credibility problems and fall far short of convincing the Court that, in light of these affidavits, when considered in light of all the evidence presented at trial, it is "more likely than not any reasonable juror would have reasonable doubt." *House*, 547 U.S. at 538.  It is clear that the evidence presented by Petitioner, when considered against the evidence adduced at trial, fails to "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  *Schlup,* 513 U.S., at 327, 115 S.Ct. 851. Equitable tolling is not warranted and the petition is untimely.

## III.   CERTIFICATE OF APPEALABILITY

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a).

When a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of

appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* In such a circumstance, no appeal is warranted. *Id.*

The Court declines to issue Petitioner a certificate of appealability, because reasonable jurists would not find it debatable whether this Court was correct in determining that Petitioner filed his habeas petition outside of the one-year limitations period and equitable tolling is not warranted.

## IV.   MOTION TO STAY

Also before the Court is Petitioner's Motion to Stay Habeas Proceedings and Hold Petition in Abeyance. Petitioner asks for a stay so that he may exhaust a claim in state court. A federal court may stay a federal habeas petition and hold further proceedings in abeyance pending resolution of state court post-conviction proceedings if outright dismissal of a habeas petition would jeopardize the timeliness of a future petition, there is good cause for the petitioner's failure to exhaust those claims, the unexhausted claims are not "plainly meritless," and

"there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines v. Weber*, 544 U.S. 269, 278 (2005).

In this case, there is no need to protect Petitioner from the expiration of the limitations period if the petition is dismissed outright to allow for exhaustion because the limitations period already has expired. Therefore, no stay is warranted under *Rhines*.

## V.    CONCLUSION

For the reasons explained above, **IT IS ORDERED** that Respondent's "Motion for Summary Judgment" (Dkt. 8) is **GRANTED**, and Petitioner's "Petition for Writ of Habeas Corpus" (Dkt. 1) is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue Petitioner a certificate of appealability.

Moreover, Petitioner's "Motion to Stay Habeas Proceedings and Hold Petition in Abeyance" (Dkt. 3) is **DENIED**.

**SO ORDERED.**

Dated:  March 31, 2015                          s/Terrence G. Berg
                                                TERRENCE G. BERG
                                                UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on March 31, 2015, using the CM/ECF system; a copy of this Order was also mailed to the Alger Correctional Facility, located at N6141 Industrial Park Drive, Munising, MI 49862, directed to Plaintiff's attention.

                                                s/A. Chubb
                                                Case Manager